IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | **UNDER SEAL** |
| v. | Case No. 1:20-CR-261 |
| SAAD JALAL, | <u>Count 1</u>: Distribution of Methylenedioxyamphetamine (21 U.S.C. § 841(a)(1)) |
| *Defendant.* | <u>Forfeiture Notice</u> |

**INDICTMENT**

November 2020 TERM – Alexandria, Virginia

<u>COUNT ONE</u>

*(Distribution of Methylenedioxyamphetamine (MDA))*

THE GRAND JURY CHARGES THAT:

On or about September 20, 2019, in Fairfax County, Virginia, within the Eastern District of Virginia, the defendant, SAAD JALAL, did knowingly, intentionally, and unlawfully distribute a mixture and substance containing a detectable amount of 3,4-methylenedioxyamphetamine ("MDA"), a Schedule I controlled substance. Specifically:

<u>GENERAL ALLEGATIONS</u>

1.     Having determined that "[t]he illegal importation, manufacture, distribution and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people[,]" Congress enacted the Controlled Substances Act (CSA), codified at Title 21, United States Code, Sections 801 *et seq.*

2.      There are five "schedules" of controlled substances, known as Schedule I, II, III, IV, and V.  Substances are "scheduled" depending on their potential for abuse and recognized medical usage.  A drug listed in Schedule I has a high potential for abuse and no currently accepted medical use in treatment in the United States.  MDA is a Schedule I controlled substance similar in appearance and effect to MDMA, which is commonly called "ecstasy" or "molly."

THE DEFENDANT

3.      At all times relevant to this Indictment, the defendant was a medical student from Canada.  He was present in the United States pursuing a clinical rotation as part of his studies in the District of Columbia.

4.      In and around early September 2019, in the District of Columbia, the defendant met and befriended three women: Individual 1, Individual 2, and the Victim.  Individual 1, Individual 2, and the Victim were roommates who resided together in Falls Church, Virginia.

THE VICTIM'S OVERDOSE

5.      On or about September 20, 2019, the defendant obtained a quantity of what he believed to be MDMA; testing later revealed that this substance was in fact MDA, not MDMA.  The defendant texted Individual 1 and explained, "I lived in Baltimore for my surgery rotation and I met this really cool dealer.  Anyway I hit him up today to see if he has a link for M and he did so I got it."  In this text, "m" referred to "molly," or MDMA.

6.      Shortly after 4:00 p.m., the defendant texted Individual 1, "Well I have 3 grams and it's in a fat rock lol," and then sent Individual 1 the following picture of the narcotics he obtained:

2



7.      Later that day, the defendant met Individual 1 and Individual 2 at their residence in Falls Church, Virginia. There, he distributed the MDA to Individual 1 and Individual 2 by dividing the drug into smaller quantities. Additionally, a quantity of the MDA was separated for the Victim, who was not present.

8.      The defendant, Individual 1, and Individual 2 then traveled from Falls Church to the District of Columbia, where they picked up the Victim from her workplace after her shift ended. Then, Individual 1, Individual 2, and the Victim each consumed a quantity of the MDA.

9.      After ingesting the MDA, the Victim became noticeably impaired. Sometime thereafter, the defendant and the three women left the District of Columbia and returned to the women's residence in Falls Church.

10.     Later that night, the Victim suffered a fatal overdose that resulted from her consumption of the MDA that the defendant distributed. The Virginia Office of the Chief Medical Examiner ruled that the cause of the Victim's death was acute methylenedioxyamphetamine (MDA) intoxication. A forensic toxicologist from the Virginia Department of Forensic Science

3

analyzed samples of the Victim's blood and found it to contain MDA.   No other controlled substances were found in the Victim's blood.

(All in violation of Title 21, United States Code, Section 841(a)(1))

## FORFEITURE NOTICE

THE GRAND JURY FURTHER FINDS that there is probable cause that the property described below is subject to forfeiture. Pursuant to Rule 32.2(a), the defendant is hereby notified that if convicted of Count One, the defendant shall forfeit to the United States, pursuant to Title 21 United States Code, Section 853(a), the following: (1) any property constituting, or derived from, any proceeds the defendant obtained, directly or indirectly, as the result of such violation; and (2) any of the defendant's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation.

Pursuant to Title 21, United States Code, Section 853(p), the defendant shall forfeit substitute property, if, by any act or omission of the defendant, the property referenced above or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

(In accordance with Title 18, United States Code, Section 924(d); Title 21, United States Code, Section 853(a) and Rule 32.2(a), Federal Rules of Criminal Procedure).

A TRUE BILL

Pursuant to the E-Government Act,
the original of this page has been filed
under seal in the Clerk's Office.

FOREPERSON

G. Zachary Terwilliger
United States Attorney

By: _____
Katherine E. Rumbaugh
Assistant United States Attorney

5